IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL S. COLEMAN,

    Plaintiff,

v.

BAY AREA HEALTH DISTRICT, BAY AREA HOSPITAL, and REBECCA DAVISSON, in her individual and personal capacity,

    Defendants.

Case No. 6:18-cv-01787-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Michael Coleman brings a procedural due process claim against all defendants and claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* against Bay Area Hospital.[1] Pl.'s First Am. Compl., ¶¶ 14–28, ECF No. 18 ("FAC"). Defendants move for summary judgment. ECF No. 23. Because no reasonable jury could find in favor of Plaintiff on either of his claims, Defendants' Motion (ECF No. 23) is GRANTED.

## BACKGROUND[2]

Plaintiff worked as a registered nurse at Bay Area Hospital from February 2001 to November 2016, specifically in the Emergency Department from 2005 on. Pl.'s Resp. 2, ECF No. 30. Rebecca Davisson is a registered nurse at Bay Area Hospital and became a manager in

---

[1] Plaintiff previously alleged disparate impact and retaliation for engaging in protected activities pursuant to the ADEA but has since withdrawn those claims. FAC ¶ 29–36; Pl.'s Resp. 1, ECF No. 30.
[2] I view the facts in the light most favorable to Plaintiff, the non-moving party.

1 – OPINION AND ORDER

the Emergency Department in 2016. *Id.* at 3. Marcella Santana did the scheduling. *Id.* at 5. In 2016, Plaintiff worked the night shifts on April 28 and 29 and planned to have April 30 and May 1 off. *Id.* Unfortunately, Plaintiff failed to consult the May schedule. *Id.* Ms. Santana scheduled Plaintiff to work the night shift on May 1 and called him when he did not show up to work. *Id.* at 5–6. Plaintiff was upset, complained about the schedule, and said "I'm not f—ing coming in." *Id.* at 6.

Ms. Santana told Ms. Davisson that Plaintiff raised his voice and cursed at her and Ms. Davisson said she would talk to Plaintiff. Pl.'s Resp. 6. Ms. Davisson spoke with Mr. Coleman several days later and said that his behavior toward Ms. Santana was inappropriate. *Id.* at 6–7. Plaintiff agreed. *Id.* Ms. Davisson told Plaintiff that he should apologize to Ms. Santana and he said he would think about it. *Id.* at 7. Ms. Davisson emailed the Emergency Department manager at the time, Dustin Hawk, about her concerns over Plaintiff's behavior and said that if Plaintiff did not apologize to Ms. Santana, it would be "best that he ride off into the sunset." *Id.*

Plaintiff retired effective May 15, 2016 and became a Gray Matters nurse. Pl.'s Resp. 9. Bay Area Hospital's Gray Matters program allows experienced nurses who are at least 55 years old to retire while continuing a reduced work schedule. Pl.'s Resp. 3. Gray Matters nurses cover other nurses' shifts and can accept or reject any shift. Defs.' Mot. 3–4. Regular and Gray Matters nurses are represented by the Oregon Nurses Association. *Id.* at 2; Pl.'s Resp. 3. The 2016–2018 Collective Bargaining Agreement provides that its provisions apply to Gray Matters employees unless specifically stated otherwise. Pl.'s Resp. 3.

Ms. Davisson scheduled Plaintiff to work night shifts on October 7 and 8, 2016 and a day shift on October 10. *Id.* at 9–10. Ms. Santana called Plaintiff on October 9 at 8:30 p.m., while he was sleeping, to discuss future scheduling. *Id.* at 10. Plaintiff told Ms. Santana he objected to the

2 – OPINION AND ORDER

call and would talk to her when he arrived at the hospital a few hours later. *Id.* Ms. Santana told Ms. Davisson that Plaintiff became angry with her, screamed obscenities, sounded intoxicated, and was abusive. *Id.* Plaintiff maintains he was not intoxicated and did not curse at Ms. Santana. *Id.* On Ms. Davisson's advice, Ms. Santana emailed Ms. Davisson and Human Resources, stating that Plaintiff spoke with her aggressively, unprofessionally, and confrontationally. *Id.* Ms. Santana later testified that she did not remember Plaintiff sounding intoxicated. *Id.* at 11.

Plaintiff met with Ms. Davisson on October 10. Pl's Resp. 11. Plaintiff raised his voice outside Ms. Davisson's office, called her a bully, and said management was "screwing" with his schedule. *Id.* Ms. Davisson asked Plaintiff to come into her office and he calmed down. *Id.* Ms. Davisson later contacted Human Resources and a decision was made to terminate Plaintiff's employment sometime between October 10 and 13. *Id.* On October 16, Plaintiff received a 30-day Notice of Termination dated October 13 and postmarked October 17. *Id.* The notice did not provide a reason for Plaintiff's termination. *Id.* On November 14, Ms. Davisson prepared a Termination Evaluation in which she stated that Plaintiff had two interactions with a coworker during which he sounded intoxicated and cursed at her multiple times. *Id.* On November 15, 2016 Plaintiff reviewed his personnel file and found no evaluation or record of why Defendants terminated him. *Id.* at 12. Human Resources told Plaintiff he was eligible for rehire. *Id.* Defendants told the Oregon Employment Department that they laid Plaintiff off due to lack of work. *Id.* Plaintiff received a copy of the Termination Evaluation in June 2017. *Id.* at 11–12. Plaintiff filed this Complaint on October 7, 2019.

## **STANDARDS**

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is

3 – OPINION AND ORDER

"genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

### I. Procedural Due Process

To prevail on this claim, Plaintiff must establish: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citation omitted).

### A. Protected Property Interest

Plaintiff argues that he had a protected property interest in continued employment entitling him to notice and an opportunity to be heard. FAC ¶¶ 13, 16–17. Plaintiff cites Article 14, Section 1 of the 2016–2018 Collective Bargaining Agreement, which provides that "[d]isciplinary action may include . . . discharge for just cause." *Id.* at ¶ 11; Pl.'s Resp. 14; Defs.' Mot. Ex. C, at 52. This provision does not apply to Gray Matters nurses. Article 2, Section 6

4 – OPINION AND ORDER

provides that "[a]ll provisions of the labor agreement will continue to apply to [Gray Matters] employees, except as specifically stated below," then sets forth six sub-parts. Defs.' Mot. Ex. C, at 7–9. None of these sub-parts address discipline or discharge. Article 2, Section 6(a), however, provides that:

> Once a nurse has been appointed to the Hospital's Gray Matters program, the Hospital reserves the right to rescind such appointment for *any lawful reason* with no less than thirty (30) calendar days' written notice to the nurse prior to the posting of the work schedule. Upon request the nurse shall be afforded an exit interview.

Defs.' Mot. Ex. C, at 7–8 (emphasis added). The "any lawful reason" clause is clearly at odds with the Article 14, Section 1 "just cause" provision. At first glance, Article 2, Section 6 implies that Gray Matters nurses are subject to the same terms as regular nurses except where the six enumerated subjects is concerned. Article 2, Section 6(a), however, unequivocally sets forth a different standard regarding discharge of Gray Matters nurses. Similarly, Plaintiff's application to the Gray Matters program read: "I understand either party may request discontinuation of the Gray Matters program by providing a 30-day written notice." Defs.' Mot. Ex. M. Plaintiff signed immediately below this statement. *See id.*

Additionally, Article 2, Section 6(c) states that, "Gray Matters [p]rogram nurses have no regular schedule. They may be requested to work any number of hours up to, but not exceeding, the regular shift hours in operation for their appointed department." Defs.' Mot. Ex. C, at 8. Because the Collective Bargaining Agreement did not guarantee Gray Matters nurses shifts, they were akin to "at will" employees, not employees who could only be fired for "just cause."

Plaintiff argues that he was "a long-time employee who was recognized as an excellent nurse and an invaluable asset," worked many shifts, and "had a legitimate expectation that if he remained employed . . . he would be given shifts to work." Pl.'s Resp. 15–16 (citing *Cocchiara*

5 – OPINION AND ORDER

*v. Lithia Motors, Inc.,* 353 Or. 282 (2013)). *Cocchiara* was a private sector promissory estoppel and fraudulent misrepresentation case where the Oregon Supreme Court held that the plaintiff could reasonably rely on his employer's promise of employment even though he was an at-will employee. 353 Or. at 284. Defendants here made no such promise to Plaintiff. Simply working for an employer for a long time and working many shifts does not establish a protected property interest.

Plaintiff next argues that even if the just cause provision does not apply to him, he had a protected property interest. Pl.'s Resp. 14, 17–19. Specifically, Plaintiff argues that Article 2, Section 6(a)'s lawful reason, 30-day notice, and entitlement to an exit interview terms obligated Defendants to provide him with an explanation for terminating him and placed substantive restrictions on the grounds for which they may discharge him, giving him an entitlement to continued employment. *Id.* at 19. "Procedural guarantees ordinarily do not transform a unilateral expectation into a constitutionally protected property interest" unless they are "intended to operate as a significant substantive restriction" on decision making. *Jacobson v. Hannifin*, 627 F.2d 177, 180 (9th Cir. 1980) (holding that procedural guarantees did not create a property interest in obtaining a gaming license). Defendants cite ample case law demonstrating that a procedural 30-day notice requirement is not a substantive restriction on decision making. Defs.' Mot. 33 (citing *Godwin v. Rogue Valley Youth Corr. Facility*, 2013 WL 3712413, at *1–3 (D. Or. July 12, 2013); *Febus-Cruz v. Sauri-Santiago*, 652 F. Supp.2d 140, 151–152 (D. P.R. 2009); *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 924 (9th Cir. 2013); *Mozier v. Board of Ed. Of Cherry Hill Tp.*, 450 F. Supp. 742, 747–48 (D. N.J. 1977)).

Even if there was an implicit good faith requirement under the Collective Bargaining Agreement, it would not establish a protected property interest. *See* Pl.'s Resp. 17–18. In

6 – OPINION AND ORDER

*Wheaton v. Webb-Petett*, the Ninth Circuit held that a property interest arose out of a state statute that said the employer could dismiss an employee "in good faith for cause." 931 F.2d 613 (1991). A property interest does not arise out of every contract with an implicit good faith requirement.

**B. Qualified Immunity**

Defendants argue that Ms. Davisson is entitled to qualified immunity because "no reasonable public official could have known that the 'any lawful reason' language in [] Article 2, § 6(a) would constitute a 'just cause' property interest." Defs.' Mot. 34. Qualified immunity in this case depends on whether Ms. Davisson violated a clearly established constitutional right in her individual capacity as a manager. An official's conduct will only violate a "clearly established" right when "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal brackets and quotations omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Supreme Court, in analyzing qualified immunity and the "clearly established" requirement, looks to whether precedent has "placed the statutory or constitutional question beyond debate." *Id.*

Plaintiff argues that Ms. Davisson is not entitled to qualified immunity because *Wheaton* and *Hayward* clearly established liability based on good faith and a legitimate claim of entitlement. Pl.'s Resp. 20; *see Wheaton*, 931 F.2d 613; *Hayward v. Henderson*, 623 F.2d 596 (9th Cir. 1980). As explained above, *Wheaton* is not dispositive here. In *Hayward*, the Ninth Circuit held that the Comprehensive Employment & Training Act of 1973's notice and opportunity to be heard requirements did not give rise to a protected property interest. 623 F.2d

7 – OPINION AND ORDER

at 597. The Court reasoned that a property interest in employment arises where there are restrictions on the grounds for discharge, such as for "just cause." *Id.* No such restriction exists here, and even if the "just cause" provision applied to Gray Matters nurses, its applicability was not "clearly established," otherwise the issue would not be so heavily disputed here. There is no evidence in the record demonstrating that Ms. Davisson made a decision that violated clearly established law, therefore she is entitled to qualified immunity.

Defendants' Motion for Summary Judgment on the procedural due process claim is GRANTED.

## II. Age Discrimination

Under the Age Discrimination in Employment Act ("ADEA"), it is unlawful for an employer to fire an employee because of their age. 29 U.S.C. § 623(a)(1) (2012). This applies with equal force at the state level. Or. Rev. Stat. § 659A.030(1)(a) (2017). The plaintiff has the burden to establish that age was the "but for" cause of the employer's adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009).[3] In meeting this burden, a plaintiff may present direct or circumstantial evidence of age discrimination. *Id.* at 177–78. Here, Plaintiff claims to have direct and circumstantial evidence. Pl.'s Resp. 21.

### A. Direct Evidence

"Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory animus] without inference or presumption.'" *Coghlan v. Am. Seafoods Co. LLC.*, 413 F.3d 1090, 1094–95 (9th Cir. 2005) (quoting *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir.

---

[3] Oregon modeled its employment statute after Title VII, signifying that both federal and state claims are analyzed under a "but for" standard. *Richardson v. Northwest Christian Univ.*, 242 F. Supp. 3d 1132, 1146 (D. Or. Mar. 16, 2017); *see also Siring v. Oregon State Bd. of Higher Educ. ex rel. Eastern Oregon Univ.*, 977 F. Supp. 2d 1058, 1061 (D. Or. Oct. 15, 2013) ("The Oregon Court of Appeals . . . has described [their] causation standard as a 'but for' test.").

8 – OPINION AND ORDER

1998). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the employer." *Id.* Plaintiff argues that Ms. Davisson made two statements that constitute direct evidence. Pl.'s Resp. 23–25. First, Ms. Davisson stated in a May 5, 2016 email that if Plaintiff did not apologize to Ms. Santana for the way he spoke to her over the phone on May 1, 2016, "it is best that he ride off into the sunset." Pl.'s Resp. 23–24; *see* Coleman Decl. Ex. 6, ECF No. 31. Plaintiff admits to raising his voice and cursing at Ms. Santana. Pl.'s Resp. 6–7. Plaintiff argues, however, that Ms. Santana knew that he planned to continue work through the Gray Matters program. *Id.* at 24. Ms. Davisson stated that she thought Plaintiff should retire completely *if* he refused to apologize. This is not direct evidence of age discrimination. Moreover, Bay Area Hospital accepted Plaintiff into the Gray Matters program despite his boorish behavior, terminating him more than five months after Ms. Davisson's statement and only after Plaintiff acted out again on October 9 and 10. Pl.'s Resp. 9–11; Reply 18.

Plaintiff next cites Ms. Davisson's August 29, 2016 email stating that Plaintiff did not renew his Certified Emergency Nurse license because he planned to retire. Pl.'s Resp. 24; Coleman Decl. Ex. 7. Plaintiff argues that Ms. Davisson forgot or ignored that he failed to renew his license because had been working extra shifts and mistakenly assumed that he planned to retire completely. Pl.'s Resp. 24. According to Ms. Davisson, Plaintiff told her he may leave the Gray Matters program because he had been covering too many shifts and did not correct her after she sent the email. Defs.' Reply 19; Davisson Reply Decl. ¶ 5, ECF No. 40. Either way, Ms. Davisson's statement that Plaintiff planned to retire is not direct evidence of age discrimination.

Age and retirement may be correlated, but Ms. Davisson's statements that Plaintiff should retire or plans to retire do not constitute proof of discriminatory animus in these contexts. No reasonable jury could conclude that either statement is direct evidence of age discrimination.

## B. Circumstantial Evidence

ADEA claims utilizing circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). First, the employee must establish a *prima facie* claim of discrimination. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citation omitted). To establish a *prima facie* case with circumstantial evidence, an employee must show that: (1) he belongs to a protected class; (2) he was performing his job satisfactorily; (3) he was subject to an adverse employment action; and (4) he was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances "giving rise to an inference of age discrimination." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000). The "degree of proof" required for a *prima facie* age discrimination claim to survive summary judgment is minimal and does not need to "rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). If the plaintiff can establish a *prima facie* claim, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action taken against the employee. *Diaz*, 521 F.3d at 1207. If the employer articulates a legitimate, nondiscriminatory reason for termination, the employee must then offer evidence that the employer's proffered reason for taking the adverse action was a pretext for discrimination. *Id*.

**1. *Prima Facie* Claim**

Defendants argue that Plaintiff cannot establish a *prima facie* disparate treatment claim, specifically the fourth element.[4] Defs.' Mot. 12. I disagree. Defendants concede that Plaintiff has raised a question of fact regarding whether Bay Area Hospital replaced him with a substantially younger employee. Defs.' Reply 15. Bay Area Hospital did not directly replace Plaintiff or add any nurses to the Gray Matters program. Defs.' Mot. 16. Regardless, a nurse or combination of nurses must have taken the shifts Plaintiff used to work, and Plaintiff was the oldest nurse in the Emergency Department. Pl.'s Resp. 22; Coleman Decl. ¶ 18. When viewing the evidence in a light most favorable to Plaintiff and considering that "very little evidence is required to establish a *prima facie* case," Plaintiff has met his initial burden. *See Wallis*, 26 F.3d at 891.

**2. Legitimate, Nondiscriminatory Reason**

Because Plaintiff has established a *prima facie* claim, the burden now shifts to Defendants to offer a legitimate, nondiscriminatory reason for Plaintiff's termination. "To suffice under *McDonnell Douglas*, an employer's explanation must explain why the plaintiff 'in particular' was laid off." *Diaz*, 521 F.3d at 1211. Defendants argue that they fired Plaintiff based on his "repeated abusive and hostile behavior." Defs.' Mot. 17; Davisson Decl. ¶ 11, ECF No. 26. An employer's subjective belief that an employee's performance is inadequate and inappropriate is a legitimate, nondiscriminatory reason for terminating an employee. *Pottenger v. Potlatch Corp.*, 329 F.3d 740, 748 (9th Cir. 2003). Consequently, the analysis turns to step three.

---

[4] Defendants also raise issues with respect to the third element, but the parties agree that Plaintiff's termination was an adverse employment action. Defs.' Mot. 16; Pl.'s Resp. 20, 22. Plaintiff limits his disparate treatment claim to his termination. Pl.'s Resp. 22 n.5.

11 – OPINION AND ORDER

**3. Pretext**

The final step of the *McDonnell Douglas* analysis requires Plaintiff to raise a genuine issue of fact concerning whether the facially legitimate reasons proffered by Defendants are merely pretextual. *See Coleman*, 232 F.3d at 1281. Plaintiff may demonstrate pretext "directly by persuading the court that a discriminatory reason more likely motivated [Bay Area Hospital] or indirectly by showing that [their] proffered explanation is unworthy of credence." *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1093–94 (9th Cir. 2001) (internal quotations and citations omitted).

Plaintiff has failed to provide evidence to establish pretext. "[W]hen evidence to refute defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Wallis*, 26 F.3d at 890–91. Plaintiff admitted that he deserved discipline for his abusive conduct and that if firing him was the answer, human resources should have done it. Defs.' Mot. 18. Plaintiff admits that his manner of interacting with management "probably had something to do with" his discharge. *Id.* Meanwhile, there is nothing in the record indicating that Bay Area Hospital's employment decision was motivated by age. Merely expressing a belief that an employer acted with an unlawful motive without providing additional evidence supporting that belief is not enough to present a triable issue of material fact. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001); *see also Rogers v. Oregon Trail Elec. Consumers Coop., Inc.*, No. 3:10-CV-1337-AC, 2012 WL 1635127, at *11 (D. Or. May 8, 2012) ("The actual motivation of the employer, not the subjective belief of the employee, is all that is relevant in an employment discrimination case."). Even if Bay Area Hospital gave Plaintiff's

shifts to a younger employee or employees, the record lacks additional evidence indicating age discrimination.

Because Plaintiff does not point to any evidence that Bay Area Hospital's legitimate, nondiscriminatory reasons for terminating him were merely a pretext for discrimination, his age discrimination claim fails. Defendants' motion for summary judgment on Plaintiff's age discrimination claim is therefore GRANTED.

## **CONCLUSION**

Defendants' Motion for Summary Judgment (ECF No. 23) is GRANTED.

IT IS SO ORDERED.

DATED this 3rd day of April, 2020.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge